```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
AVIGAIL ROSENBERG,                                :
                        Plaintiff,                :
                                                  :         OPINION AND ORDER
 v.                                               :
                                                  :         15 CV 6641 (VB)
UNITED PARCEL SERVICE GENERAL                     :
SERVICES CO., a/k/a UNITED PARCEL                 :
SERVICE, INC. d/b/a UPS,                          :
                        Defendant.                :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Avigail Rosenberg brings this action against defendant United Parcel Service General Services Co., a/k/a United Parcel Service, Inc. d/b/a UPS[1] ("UPS"), under the Convention for the Unification of Certain Rules for International Carriage by Air, Done at Montreal on 28 May 1999, S. Treaty Doc. No. 106-45 (entered into force on November 4, 2003) (the "Montreal Convention" or "Convention"), alleging UPS caused a shipment of cargo from the United States to Israel to be delayed, and that plaintiff incurred damages as a result.

Before the Court is UPS's motion for summary judgment. (Doc. #25).

For the following reasons, the motion is GRANTED.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

UPS submitted a brief, a statement of facts pursuant to Local Civil Rule 56.1(a), and two declarations ("Dec'l") with supporting exhibits, in support of its motion. Plaintiff submitted a

---

[1] Defendant asserts plaintiff named the incorrect defendant, and that the correct defendant—which contracted with plaintiff to transport the shipment in question—is United Parcel Service, Inc. (Pacheco Decl. ¶ 4).

1

declaration of plaintiff's counsel, David M. Katz, in opposition to UPS's motion. (Doc. #30). Plaintiff did not submit a brief or a counterstatement of facts pursuant to Local Civil Rule 56.1(b). Thus, the Court deems the facts in UPS's Rule 56.1 statement to be undisputed, except to the extent they are directly contested in Mr. Katz's declaration. Local Civil Rule 56.1(c); T.Y. v. N.Y. City Dep't of Educ., 584 F.3d 412, 417–18 (2d Cir. 2009) ("Should the nonmoving party wish to contest the assertions contained within a Rule 56.1 statement, [it] must respond to each of the statement's paragraphs and include, if necessary, a statement of the additional material facts that demonstrate a genuine issue for trial."). These motion papers reflect the following factual background.

On May 9, 2014, plaintiff contracted with UPS over the Internet to have UPS transport four packages containing Apple iPhone 5S cellular telephones from New York to Israel to be delivered to a recipient with an address in Kiriat Malachi, Israel. (Pacecho Dec'l ¶¶ 5, 6).

UPS transported the shipment to Israel without incident in May 2014. However, upon arrival at Ben Gurion International Airport in Tel Aviv, the shipment was placed under a hold by Israeli Customs. Israeli Customs would not clear and release the shipment until required shipping charges, customs duties, taxes, fees, and surcharges were paid. An attorney for plaintiff contacted UPS in late June 2014 regarding the delayed delivery. Plaintiff had not paid any of the required shipping charges, duties, taxes, or fees at that time.

After several email exchanges with various UPS agents, plaintiff made the required payments on August 18 and 19, 2014. Israeli Customs cleared and released the shipment on August 31, 2014. UPS delivered the shipment to the intended recipient on September 1, 2014.

**DISCUSSION**

I.   <u>Legal Standard</u>

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. <u>See id</u>. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." <u>Wilson v. Nw. Mut. Ins. Co.</u>, 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine issue of material fact. <u>Zalaski v. City of Bridgeport Police Dep't</u>, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which she has the burden of proof, then summary judgment is appropriate. <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249-50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." <u>Brown v. Eli Lilly & Co.</u>, 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted). The "mere existence of a scintilla of evidence in support" of the non-moving party's

3

position is likewise insufficient; "there must be evidence on which the jury could reasonably find" for her.  Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial.  Nora Bevs., Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.   Application

UPS argues it is entitled to summary judgment under both the Montreal Convention and the shipping contract that governed the transaction at issue.  It further argues in its reply that it is entitled to summary judgment with respect to any allegation of fraud made by plaintiff in her opposition to defendant's motion.

For the following reasons, the Court agrees with UPS.

A.   The Montreal Convention

Both parties agree this dispute is governed by the Montreal Convention because it involves the shipment of cargo by international air carriage between the United States and Israel, which are both signatories to the Convention.  (Compl. ¶ 20; Def's Br. at 10).

UPS argues it is entitled to summary judgment because plaintiff "failed to timely satisfy the notice of claim requirements" of the Montreal Convention.  (Def. Br. at 2).

The Court agrees that UPS is entitled to summary judgment under the Convention, but on different grounds. Specifically, the Court concludes plaintiff has failed to come forward with any evidence that UPS caused the delay at issue.

Article 19 of the Montreal Convention governs carrier liability for delay in the shipment of cargo:

> The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, <u>the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures</u>.

(Emphasis added).

When customs border patrol or airport security measures are responsible for a delay, courts have consistently found the carrier not liable under the Montreal Convention. See <u>Masudi v. Brady Cargo Servs., Inc.</u>, 2014 WL 4416502, at *5 (E.D.N.Y. Sept. 8, 2014) (granting summary judgment where "Defendants assert[ed] that the Shipments arrived as scheduled and that Plaintiff caused the delay by refusing to pay the customs duties for the Shipments upon arrival in the Dominican Republic," and "Plaintiff [did] not produce[] any evidence to dispute th[at] assertion"); <u>Cohen v. Delta Air Lines, Inc.</u>, 751 F. Supp. 2d 677, 680 (S.D.N.Y. 2010) ("The Court is persuaded that no reasonable juror could find that it was possible for Delta to take off in the face of a contrary [air traffic control] mandate."); <u>Edem v. Ethiopian Airlines Enter.</u>, 2009 WL 4639393, at *7 (E.D.N.Y. Sept. 30, 2009), <u>aff'd,</u> 501 F. App'x 99 (2d Cir. 2012) (dismissing claims against carrier where "plaintiff allege[d] that Ethiopian immigration officials refused to let him leave Ethiopia," and noting that the delay was "certainly not the fault of any . . . employee" of defendant).

Here, plaintiff has provided no evidence that the delay was caused by UPS and not by Israeli Customs.

UPS states in its uncontested Rule 56.1 statement and supporting declaration of Wanda Pacheco, Global Cargo Claims Manager for UPS, that the delay was due to a hold placed on the shipment by Israeli Customs upon its arrival in Israel. Specifically, according to the Pacheco declaration, UPS records indicate the shipment "arrived at the [Tel Aviv, Israel] Airport without incident," and "[a]s is standard operating procedure for UPS and an unavoidable requirement of the Israeli Government, immediately upon arrival in Israel the four (4) packages in the Shipment were submitted by UPS to Israeli Customs . . . for a clearance process." (Pacheco Dec'l at ¶¶ 11-12). A hold was then "placed on the goods by Israeli Customs for security reasons which were not explained to UPS by Israeli Customs." (Id. ¶ 13). "The hold by Israeli Customs was entirely beyond the control of UPS." (Id.).

Moreover, as of late June 2014, "none of the shipping charges, duties, taxes, or surcharges had been paid" by plaintiff, and "payment was a requirement of Customs clearance and release and UPS delivery." (Id. at ¶ 14). After multiple emails between plaintiff's counsel and UPS, plaintiff paid the "Israeli Customs and import duties, taxes, and fees" on August 18, 2014, and she paid the UPS shipping charges on August 19, 2014. (Id. at ¶ 15). Israeli Customs released the shipment on or about August 31, 2014, and UPS delivered the shipment to the intended recipient the next day.

Plaintiff states in the Katz declaration that the Pacheco declaration is "factually inaccurate," but does not provide any specific counter-facts or evidence that address the above description of events. The only evidence in the record submitted by plaintiff consists of email correspondence between plaintiff's attorney and UPS during the months of June–August 2014 attached as one exhibit to plaintiff's complaint. (Doc. #1-1). Arguably, statements in the emails suggest UPS had the ability to release the goods once certain payments were made. For

6

example, on August 14, 2014, a UPS employee wrote to Mr. Katz, "[t]he goods will be released once the wire is complete."  (Doc. #1-1 at p. 13).  However, this amounts to "merely colorable" evidence of plaintiff's claim, insufficient to survive a motion for summary judgment.  Moreover, the emails underscore plaintiff had not made the required payments before August 18, 2014, and that the goods could not be released until then as a result.

In sum, there is no genuine issue as to the fact that the shipment delay was a result of a hold by Israeli Customs and plaintiff's failure to make certain required payments.  Accordingly, UPS cannot be held liable under the Montreal Convention.

B.      Liability under the Governing Contract

UPS also argues it is entitled to summary judgment because "the transportation contract that governs Plaintiff's claim specifically precludes any liability of UPS for the consequential economic losses and delayed delivery for which Plaintiff seeks redress."  (Def. Br. at 8).

The Court agrees.

Plaintiff's "Shipment Receipt" memorialized the terms and conditions of the transportation contract between the parties.  (Pacheco Dec'l at ¶¶ 5, 8, and Ex. A).  The Shipment Receipt incorporates by reference the UPS Tariff/Terms and Conditions of Service that were in effect at the time, which were available on the UPS website when plaintiff booked the shipment.  (Pacheco Dec'l at ¶ 8, Ex. A).

The Tariff/Terms and Conditions of Service provide that UPS is not liable for consequential damages caused by delay:  "Under no circumstances shall UPS be liable for any special, incidental, or consequential damages including, but not limited to, damages arising from delayed delivery . . . except as specifically provided for shipments made under the UPS Service

7

Guarantee."[2]  (Pacheco Dec'l Ex. B, § 50.3).  The UPS Service Guarantee does not apply when a shipment is delayed by causes beyond UPS's control, including "acts or omissions of customs or similar authorities."  (Id. at § 48.2).  As discussed above, the delay here was caused by Israeli Customs and plaintiff's failure to make required payments, not by UPS.

Accordingly, no reasonable juror could find UPS liable for this delay under the governing contract.

C.  Fraud Allegation

Plaintiff's complaint alleges UPS employees "knew the facts about the status of the phones but still . . . by their elusive statements of 'fraud and abandonment' fraudulently misrepresented the material facts and status reports to Plaintiff by providing vague, irrelevant, untruthful responses that essentially hid and misrepresented the material facts."  (Compl. ¶ 17).  However, there is no specific cause of action for fraud in the complaint.  Moreover, in the context of the instant motion, plaintiff only references the supposed fraud allegation to rebut UPS's argument that, under the Montreal Convention, plaintiff was required to make a written complaint within a particular period of time.  (Katz Dec'l at ¶ 13 ("[I]nasmuch as Plaintiff's complaint asserts fraudulent misrepresentation it likewise should be governed by Article 31(4) of the Montreal Convention which provides, '[i]f no complaint is made within the times aforesaid, no action shall lie against the carrier, save in the case of fraud on its part.") (emphasis added)).

In any event, plaintiff's fraud claim, to the extent alleged at all, is dismissed because it is not alleged "with particularity" as required by Rule 9(b) of the Federal Rules of Civil Procedure.

---

[2]  Plaintiff alleges UPS "damaged" her property because the cargo "was in a depreciated . . . condition" when it finally arrived.  (Compl. ¶ 28).  However, the UPS Tariff/Terms and Conditions distinguishes between "consequential damages . . . arising from . . . delayed delivery" and "damage" to the property shipped.  (Pacheco Dec'l Ex. B, § 50.3).  The Court construes the damage allegedly caused by depreciation here as falling into the former category.

See Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006). In addition, plaintiff has not made any allegation or provided any evidence of facts suggesting the presence of fraudulent intent. Id. ("[P]laintiffs must allege facts that give rise to a strong inference of fraudulent intent.") (internal quotations and citations omitted).

Accordingly, there is no genuine issue as to any material fact and UPS is entitled to judgment as a matter of law.

## CONCLUSION

Defendant's motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion (Docs. #25) and close this case.

Dated: February 6, 2017
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge